# EXHIBIT C

Confidential

# JKJ Partnership 2011 LLP

## Partnership Agreement

This Partnership Agreement ("Agreement") is entered into effective as of the ___1ST___ day of August, 2011, by and among Kelly Wood, Jeffrey Stahl and John Venditto (individually, a "Partner" and collectively the "Partners").

## B A C K G R O U N D:

The Partners have entered into a Common Interest and Joint Prosecution Agreement, as the same may be amended from time to time (the "Joint Prosecution Agreement") providing for their cooperation in the filing and prosecution of a whistleblower action as described in the Joint Prosecution Agreement (the "Action").

The parties hereto desire to (i) file and prosecute the Action through a limited liability partnership formed pursuant to the Act and this Agreement and (ii) enter into this Agreement to form such limited liability partnership and to set forth their respective rights, duties and obligations with respect thereto.

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I

### Defined Terms; Operation of Partnership

**Section 1.01 Definitions.** Within the context of this Agreement, the following terms shall have the following meanings:

"**Act**" means the Delaware Revised Uniform Partnership Act.

"**Agreement**" means this Partnership Agreement, as the same may be amended from time to time.

"**Capital Contribution**" means the amount of money and the fair market value of any property contributed to the Partnership by a Partner (net of any liabilities to which such property is subject or that are assumed by the Partnership in connection with such contribution).

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Interest**" means an ownership interest in the Partnership, including all of the rights and obligations in connection therewith under this Agreement and the Act.

"**Net Distributable Proceeds**" means gross cash or property received by the Partnership from all sources, increased by reductions in Reserves, and reduced by the portion used (i) to pay Partnership expenses, including debt service, (ii) to make investments and capital expenditures, and (iii) to fund Reserves.

Confidential

"**Partners**" means the Partners, and any Person subsequently admitted as a partner in accordance with the terms of this Agreement.

"**Partnership**" means the limited liability partnership formed and operated pursuant to the terms of this Agreement.

"**Person**" means any individual or any partnership, corporation, estate, trust, limited liability company or other legal entity.

"**Profits**" and "**Losses**" mean, for each year or other period, an amount equal to the Partnership's federal taxable income or loss for such year or period, and all corresponding items of income, gain, loss, deduction, and credit.

"**Regulations**" means the income tax regulations promulgated under the Code, as such regulations may be amended from time to time.

"**Reserves**" means amounts set aside to pay future costs or expenses that are anticipated to exceed cash available to pay such costs or expenses when due, as determined in the discretion of the Partners.

**Section 1.02  Formation of Limited Liability Partnership; Name.**  The Partners hereby form the Partnership as a limited liability partnership pursuant to the Act. The Partners hereby agree to operate the Partnership as a limited liability partnership under the terms of this Agreement and the Act. Whenever the terms of this Agreement conflict with the Act, the terms of this Agreement shall control, except with respect to any matters contained in the Act that cannot be modified or waived by a limited liability partnership agreement. The Partnership shall be operated under the name "JKJ Partnership 2011 LLP." The Partners shall cause to be filed a Statement of Qualification in the form attached hereto as Exhibit A with the Secretary of State of the State of Delaware and such other certificates and documents as are necessary to qualify the Partnership to conduct business in any jurisdiction in which the Partnership conducts business. Any member or employee of BR LLP (as defined in Section 1.10) shall be authorized to execute and file such Statement of Qualification.

**Section 1.03  No Separate Legal Entity.**  As authorized by Section 15-201(a) of the Act, the Partnership shall not be a separate legal entity distinct from its Partners. In the event of any conflict between the terms of this Section 1.03 and the terms of any other Section of this Agreement, the terms of this Section 1.03 shall control.

**Section 1.04  Limited Liability.**  Any obligation of the Partnership, whether arising in contract, tort or otherwise, shall be solely the obligation of the Partnership. A Partner shall not be personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such an obligation solely by reason of being or so acting as a Partner. No Partner shall be liable to the Partnership or any other Partner for breach of fiduciary duties to the Partnership or another Partner.

**Section 1.05  Registered Office and Registered Agent; Principal Business Office.**
The registered office of the Partnership required under the Act shall be 3500 S. DuPont Highway, Dover, Delaware 19901 and the name of the registered agent at such address is:

2

12113166v.2

Confidential

Incorporating Services, Ltd. The registered office and registered agent may be changed by the Partners in accordance with the Act. The principal business office of the Partnership shall be located at such address as shall be designated by the Partners from time to time.

**Section 1.06** <u>Purpose.</u> The purpose and business of the Partnership is to file and prosecute the Action. The Partnership is authorized to do any and all acts and things necessary, appropriate, incidental to, or convenient for the furtherance and accomplishment of its purposes.

**Section 1.07** <u>Term.</u> The term of the Partnership shall commence on the date of filing of the Statement of Qualification, and the Partnership shall continue until the final resolution or settlement of the Action without further right of appeal.

**Section 1.08** <u>Title to Property.</u> All real and personal property owned by the Partnership shall be owned by the Partnership and no Partner shall have any ownership interest in such property in the Partner's individual name or right, and each Partner's Interest shall be personal property for all purposes. The Partnership shall hold all of its real and personal property in the name of the Partnership and not in the name of any Partner.

**Section 1.09** <u>Waiver of Partition.</u> No Partner shall either directly or indirectly take any action to require partition or appraisement of the Partnership or of any of its assets or properties or cause the sale of any Partnership property, and notwithstanding any provisions of applicable law to the contrary, each Partner hereby irrevocably waives any and all right to maintain any action for partition or to compel any sale with respect to such Partner's Interest, or with respect to any assets or properties of the Partnership, except as expressly provided in this Agreement.

**Section 1.10** <u>Joinder to Certain Agreements</u>. The Partnership hereby joins in, and agrees to assume the obligations of and be bound as a "Relator" under, the Joint Prosecution Agreement. In the event of any conflict between the terms of this Agreement and the terms of the Joint Prosecution Agreement, the terms of the Joint Prosecution Agreement shall control. Further, the Partnership hereby joins in, and agrees to assume the obligations of and be bound as a "Client" under, the Retainer Agreement to which the Partners and Blank Rome LLP ("BR LLP") are parties, as the same may be amended from time to time (the "Retainer Agreement") and BR LLP shall be a third party beneficiary of and entitled to rely on such joinder. In the event of any conflict between the terms of this Agreement and the terms of the Retainer Agreement, the terms of the Retainer Agreement shall control.

# ARTICLE II

## CAPITAL CONTRIBUTIONS

**Section 2.01** <u>Assignment of Rights in Action; Capital Contributions.</u> As an initial Capital Contribution to the Partnership, each of the Partners hereby contributes and assigns to the Partnership all of his or her rights, title and interest in and to the Action. The assignment of such rights in and to the Action shall be valued at zero for Capital Account purposes for each Partner. The initial Capital Contributions of the Partners, and any additional Capital Contributions, shall be set forth on the books and records of the Partnership. No Partner shall be obligated to make any additional Capital Contributions to the Partnership.

3

12113166v.2

Confidential

## ARTICLE III
### DISTRIBUTIONS

**Section 3.01 Distributions of Net Distributable Proceeds.** Net Distributable Proceeds shall be distributed to the Partners at such times and in such amounts as provided in the Joint Prosecution Agreement.

## ARTICLE IV
### PROFITS AND LOSSES

**Section 4.01 Allocations of Profits and Losses.** Profits and Losses shall be allocated to Capital Accounts in accordance with the Partners' distributive shares under the Joint Prosecution Agreement.

## ARTICLE V
### MANAGEMENT OF PARTNERSHIP

**Section 5.01 General Provisions Concerning Management.** The Partners shall have the exclusive right and responsibility to manage the business of the Partnership and are hereby authorized to take any action of any kind and to do anything and everything the Partners deem necessary in connection therewith. Any action taken by or on behalf of the Partnership shall require the consent of both Partners. In the event of any dispute between the Partners, the Dispute Resolution provisions of the Joint Prosecution Agreement shall control.

## ARTICLE VI
### BOOKS AND RECORDS; TAX AND FINANCIAL MATTERS

**Section 6.01 Books and Records.** Proper and complete records and books of account of the Partnership shall be maintained at the principal place of business of the Partnership. The Partnership books shall be closed and balanced at the end of each fiscal year. Each Partner or duly authorized representative of a Partner shall have access and the right to inspect such books and records during normal business hours.

**Section 6.02 Fiscal Year.** The fiscal year of the Partnership shall end on December 31st of each year.

**Section 6.03 Banking.** All funds of the Partnership shall be deposited in the name of the Partnership in such checking account or accounts as shall be designated by the Partners. All withdrawals therefrom are to be made upon checks signed by a Person or Persons authorized by the Partners.

Confidential

# ARTICLE VII

## TRANSFERS, ADMISSIONS AND WITHDRAWALS

**Section 7.01 Transfers.** No Partner shall transfer, sell, assign, encumber, or otherwise dispose of all or any portion of the Partner's Interest without the written consent of the Partners. Any purported transfer, sale, assignment, encumbrance, or other disposition in violation of this Agreement shall be null and void.

**Section 7.02 Admissions.** No transferee of an Interest shall be admitted as a Partner of the Partnership without the written consent of the Partners. Any transferee of an Interest who is not admitted as a Partner shall have the rights of an assignee with respect to distributions and Profits and Losses attributable to the transferred Interest, but shall have no rights as a Partner under this Agreement or the Act.

**Section 7.03 Withdrawals.** No Partner shall have the right to withdraw or dissociate from the Partnership prior to the dissolution and winding up of the Partnership except: (i) upon 60 days prior written notice to the non-withdrawing Partner(s) or (ii) with the written consent of the non-withdrawing Partner(s). Any assignment of rights in the Action previously made by a withdrawing Partner pursuant to Section 2.01 shall be automatically revoked and rescinded effective as of the withdrawal of such Partner. If after any such pending withdrawal, there shall be only one Partner remaining, the non-withdrawing Partner shall have the right to admit new Partner(s) without the consent of the withdrawing Partners.

# ARTICLE VIII

## TERMINATION AND DISSOLUTION

**Section 8.01 Dissolution Events.** Subject to Section 1.07, the Partnership shall be terminated and dissolved upon at such time and on the happening of such events as shall be determined by the Partners. The death, incapacity, bankruptcy or any other incapacity or withdrawal of a Partner shall not cause a dissolution of the Partnership.

**Section 8.02 Liquidation.**

(a) **Winding Up.** Upon the dissolution of the Partnership, the Partnership's business shall be liquidated in an orderly manner. The Partners shall determine which Partnership property shall be distributed in-kind and which Partnership property shall be liquidated. The liquidation of Partnership property shall be carried out as promptly as is consistent with obtaining the fair value thereof.

(b) **Payments and Distributions.** Partnership property or the proceeds therefrom, to the extent sufficient therefor, shall be applied and distributed in the following order of priority, with no distribution being made in any category set forth below until each preceding category has been satisfied in full:

(i) To the payment and discharge of all of the Partnership's debts and liabilities, including any debts and liabilities owed to any Partner, and to the expenses of liquidation;

12113166v.2

Confidential

      **(ii)**  To and among the Partners in accordance with Article III of this Agreement.

# ARTICLE IX
## MISCELLANEOUS

  **Section 9.01 Parties Bound; No Third Party Beneficiaries.** This Agreement shall inure to the benefit of and shall be binding upon all of the parties and their respective heirs, successors and assigns. No provision of this Agreement is intended to or shall be construed to grant or confer any right to enforce this Agreement or any remedy for breach of this Agreement to or upon any Person other than the parties hereto.

  **Section 9.02 Applicable Law.** This Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware without regard to its conflict of law rules.

  **Section 9.03 Amendment.** No change or modification to this Agreement shall be valid unless the same is in writing and signed by the Partners.

  **Section 9.04 Entire Agreement.** This Agreement contains the entire understanding among the parties and supersedes any prior understandings and agreements between them respecting the subject matter hereof. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties hereto relating to the subject matter of this Agreement which are not fully expressed herein.

  **Section 9.05 Severability.** If any provision of this Agreement or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby but rather shall be enforced to the greatest extent permitted by law.

  **Section 9.06 Construction.** When from the context it appears appropriate, each term stated either in the singular or the plural shall include the singular and the plural and pronouns stated either in the masculine, the feminine or the neuter shall include the masculine, the feminine and the neuter.

  **Section 9.07 Headings and Captions.** The headings and captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provisions herein.

[continued and to be signed on following page]

Confidential

**Section 9.08 Counterparts.** This Agreement may be executed in one or more counterparts with the same effect as if all of the Partners had signed the same document. All counterparts shall be construed together and shall constitute one and the same instrument.

**Section 9.09 Acknowledgement.** The Partners understand and hereby acknowledge that they have read and understand this Agreement, that they had the opportunity to consult with independent counsel (i.e., counsel other than BR LLP), and that they agree to the terms set forth in this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**Partners:**

_____          _____
Kelly Wood                           Jeffrey Stahl

_____
John Venditto

7

12113166v.2

**Confidential**

Exhibit A

## STATEMENT OF QUALIFICATION OF DOMESTIC PARTNERSHIP FORMED AS A LIMITED LIABILITY PARTNERSHIP

OF

## JKJ PARTNERSHIP 2011 LLP

This Statement of Qualification of Domestic Partnership Formed as a Limited Liability Partnership of JKJ Partnership 2011 LLP (the "Partnership") is being executed as of August__, 2011 pursuant to the requirements of §15-1001 of the Delaware Revised Uniform Partnership Act (the "Act").

1. <u>Name</u>. The name of the Partnership is: JKJ Partnership 2011 LLP.

2. <u>Registered Office and Registered Agent</u>. The address of the registered office of the Partnership in the State of Delaware is 3500 S. DuPont Highway, Dover, Delaware 19901.

The name of its registered agent at such address is: Incorporating Services, Ltd.

3. <u>Number of Partners</u>. The number of partners of the Partnership as of the date hereof is three.

4. <u>Limited Liability Partnership</u>. The Partnership elects to be a limited liability partnership under the Act.

5. <u>No Separate Legal Entity</u>. As authorized by Section 15-201(a) of the Act, the Partnership shall not be a separate legal entity distinct from its partners.

IN WITNESS WHEREOF, the undersigned has caused this Statement to be signed as of the day and year first above written.

_____

_____, Authorized Person